## WASHINGTON FIDELITY NAT. INS. CO. v. SMITH.

### No. 4608.

Court of Civil Appeals of Texas. Texarkana.

Jan. 31, 1935.

Rehearing Denied Feb. 7, 1935.

414

J. A. Ward, of Mt. Pleasant, for appellant.

Sam Williams, of Mt. Pleasant, for appellee.

HALL, Justice.

On February 15, 1930, appellee made application to the appellant for policy of health and accident insurance. This application was made through Mr. E. V. Thorpe of Dallas, Tex., general agent of appellant, and Mr. W. H. Seay, local agent of appellant. On February 21, 1930, the appellant delivered its policy of insurance to appellee whereby it agreed to compensate the appellee for sickness or accident which incapacitated her from performing her duties and compelled her to "remain within the house."

Appellee was taken ill with appendicitis on July 20, 1932, and was carried to the home of her brother, Dr. A. A. Smith, in Talco, Tex., where she remained until the 16th day of August, 1932, when she was removed by Dr. Smith to the Sanitarium of Paris at Paris, Tex. An operation was performed on her at Paris on August 17, 1932, and she remained continuously in said sanitarium until September 4, 1932, when she was again taken to the home of Dr. Smith at Talco, where she remained for about a week. She was then carried to her home, that is, the home of her mother, in the same town where she had been living prior to her illness. She remained in her mother's home until the 19th of September, when she began to teach school. During the time she was at her brother's home and at her mother's home she visited the surface toilet as it became necessary. On some occasions she was assisted to said toilet and at others she went alone. On two occasions she went from her home a short distance to town in a coupé. On each of these occasions she was accompanied by her brother, Dr. Smith.

Proper proofs were made by appellee to appellant of her sickness, and some time later it forwarded to her a check for a lesser amount than she claimed, which check was refused. The attorney for appellee gave the required statutory notice to appellant demanding payment in full for said sickness, said amount demanded being $248.36, which was for total disability from July 20, 1932, to September 19, 1932, and the extra amount due under the policy for the time she remained in the Sanitarium of Paris, which amount was refused, and this lawsuit resulted. Appellee brought her suit for the principal sum of $248.36, together with $100 attorney's fee, and 12 per cent. penalty.

The appellant answered denying liability alleging that appellee had made false answers to questions Nos. 11 and 13 in her application for insurance, which false answers were material to the risk of insurance, alleging further that by express terms the application was made a part of the insurance contract.

Question No. 11 in said application is as follows: "Has any application for health, accident or life insurance ever made by you been declined, or any policy of insurance cancelled or renewal of any kind refused by any company, association, or society?" Answer: "No."

Question No. 13 is as follows: "Have you been disabled by either accident, or illness or received medical or surgical attention during the last ten years? If so, when, for what and duration." Answer: "In January, 1929, for flu lasting two weeks. In January, 1929, for cold settled in ear, lasting three weeks. Was drained, fully recovered."

Appellee answered appellant's contentions by alleging that she gave to the general agent of appellant, Mr. Thorpe, who wrote the answers to the questions in the application, the correct answer to question No. 11, stating that in 1926 she had had a controversy with another insurance company about a claim which resulted in her calling on the company to cancel the policy and return to her the unearned premium. She alleged further that she correctly answered question No. 13 by stating that in 1926 she had had diarrhea and that the appellant's general agent, Mr. Thorpe, in the presence of her brother, Dr. Smith, and Mr. W. H. Seay, appellant's local agent, stated that the answers to said questions were immaterial.

A trial was had to a jury, and upon special issues answered favorably to appellee, the trial judge awarded judgment for appellee in the principal sum of $248.36, $75 attorney's fee, and 12 per cent. of said claim, or $29.80 penalty, a total of $353.16 with 6 per cent. interest.

In the first and third assignments of error appellant strenuously insists that the trial court erred in permitting the appellee and

Dr. Smith to testify that at the time the application was executed she told General Agent Thorpe in the presence of Local Agent Seay that she had had a disagreement with a certain health and accident insurance company-over a claim and had requested that her policy with that company be canceled; and, further, in answer to another question that she, in the presence of Dr. Smith and Local Agent Seay, told General Agent Thorpe that in 1926 she had suffered for a short time with diarrhea. Objection was made that this testimony varied the terms of the written contract of insurance, and was therefore inadmissible. Article 5045 of the Revised Statutes of Texas states: "No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed." In the case of Commercial Casualty Ins. Co. v. Hamrick (Tex. Civ. App.) 60 S.W.(2d) 247, 250, Judge Looney, speaking for the court, with reference to incorrect answers in an application for insurance, makes the following observation: "However, the evidence shows that Mr. Lankford was, not only a soliciting, but, in fact, was a general agent; that, in taking plaintiff's application for and delivering the policy, Lankford's counter signature as an 'authorized representative' of defendant, was the final and effective act that consummated the insurance contract, and, when delivery of the policy was made, Lankford acted with full knowledge of the history of plaintiff's prior injury, and of the then condition of his leg and health; hence, Lankford's knowledge of these facts will be imputed to the defendant. Plaintiff answered, truthfully, all questions propounded by Lankford, and besides, at that time, Lankford personally examined plaintiff's leg, and, if the application fails, in any respect, to disclose a material fact, or contains misstatements with reference to any material matter, the fault or dereliction is that of the agent and not of plaintiff. To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then insist upon these facts as a ground of avoidance, is, as stated by our Supreme Court in Liverpool, etc., Co. v. Ende, 65 Tex. 118, 'to attempt a fraud.' Proceeding further, the court said: This the courts will neither aid nor presume, and when the alternative is to find this or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery, and is a waiver of the known ground of invalidity." And citing numerous cases.

In the case of Brady Mutual Life Ins. Ass'n v. Smith, decided by the Court of Civil Appeals at Austin on November 7, 1934, and reported in 76 S.W.(2d) 231, 232, the court says: "But appellant says that, since the application, which was a part of the insurance contract, contained the representation or warranty that all answers to questions were true and correct, the aforementioned evidence would vary the terms of the written contract, and was therefore not admissible, absent pleadings of appellee that the acts of the agent incorrectly transcribing the answers would constitute fraud or mistake, or would create an estoppel. This contention simply raises in another way the question of the sufficiency of appellee's pleadings, and is not sustained, because appellee's pleadings were sufficient. If, however, it be the contention of appellant that in any event the evidence referred to was not admissible, because it varied the terms of the written contract, then such contention is not sustained. Appellee did not warrant that the agent of appellant had correctly written his answers; but only that his answers, as made by him, were true and correct; and the law is settled that, where the insured makes truthful answers to the questions contained in the application for insurance, but his answers are incorrectly transcribed by the agent taking the application for the insurer, the insurer is estopped to assert their falsity as a defense to the policy. Schumann v. Brownwood Mutual Life Ins. Ass'n (Tex. Com. App.) 286 S. W. 200; Washington National Ins. Co. v. Brock (Tex. Civ. App.) 60 S.W.(2d) 861, writ refused."

■■■ Numerous cases could be cited to further fortify the proposition laid down in the citations quoted above. It is clear that the appellee would have the right to rely upon the statements of appellant's General Agent Thorpe to the effect that the answers to questions Nos. 11 and 13 in her application for insurance were immaterial. She had a right, and it became her duty, to tell the agent the truth in answer to all the questions in said application. This she testifies she did. She is corroborated in this by Dr. Smith, and in a partial way by appellant's agent Mr. Seay. We therefore hold that the trial court was correct in admitting the testimony complained of in assignments 1 and 3.

■■■ In considering assignments Nos. 2, 4, and 5, we will group same for convenience

because they refer in a measure to the same matter. Appellant contended on the trial of the case that appellee, in her proof of claim to the appellant, stated that she was first confined to her room on the 16th day of August, 1932, and was released from same on the 4th day of September, 1932. Complaint is made of the action of the trial court in permitting the appellee to testify that she signed a paper exhibited to her dated September 1, 1932, but that she did not state to Mr. De Lay or any one else that she was first confined to her room on August 16, 1932, that she never swore to anything before Mr. De Lay, and she did not know him. It is insisted that this was an effort of the witness to impeach the sworn proof of claim made by plaintiff and impeach the jurat of the officer because it had not been shown that the appellant knew of the false official certificate of notary. There was no error in the trial court's action on permitting this testimony, or of refusing to strike same from the record or in refusing to continue the cause on account of surprise. If, as the witness states, she did not make the statement attributed to her and did not make the affidavit thereto, it was both her privilege and duty to deny same. Appellee's pleadings had been on file since the 31st day of July, 1933, stating the amount for which she was contending. The attorney for appellee had given the appellant written notice on May 19, 1933, of the amount sought to be collected, which amount was for the full time of the sickness of appellee; the trial was had on the 10th day of August, 1933; thus we are unable to see in what manner appellant could have been either surprised or misled as to what the probable testimony of appellee would be on the trial of the case.

■ Appellant's sixth, seventh, eighth, ninth, tenth, and eleventh assignments are grouped because they have to do with the submitting of certain special issues in the court's charge to the jury. The trial court very properly charged the jury on the disputed issues of fact made by the evidence, which was in a large measure the testimony complained of in the assignments heretofore discussed, and what we have said in regard to assignments 1 and 3, and the authorities there cited, applies with equal force to these assignments. All disputed issues of material facts must be submitted to the jury for determination.

■ Appellant's assignment No. 12 complains of the definition of the trial court to the term "confinement within the house." The court's definition was: " 'Confinement within the house' does not necessarily mean a constant literal restraint with the enclosure of four walls; and visits by the insured to the surface toilet a short distance from the house where the insured was then staying, which was necessary in the protection of her health, and an occasional ride in an automobile to town to secure fresh air upon the advice of her doctor would not necessarily mean that she was not at such times confined within her house as contemplated by the policy or contract in evidence in this case." This same definition was approved by this court, speaking through Judge Hodges, in the case of Southern Surety Co. v. Diercks, 250 S. W. 755, writ of error refused by the Supreme Court; and is quoted with approval in the case of Federal Surety Co. v. Waite (Tex. Civ. App.) 297 S. W. 312. Therefore this assignment is overruled.

■ Appellant complains in assignment No. 13 that appellee was not confined in an "incorporated or licensed hospital." The proof and evidence shows that she was confined from August 16th until September 4th in the "Sanitarium of Paris" at Paris, Tex. The contention is made that a "sanitarium" is not a "hospital." No complaint is made that the Sanitarium of Paris was not licensed nor incorporated, but the sole contention is that a sanitarium is not a hospital. The New Century Dictionary defines a "sanitarium" to be a sanatorium, and a sanatorium to be a hospital; therefore this assignment is overruled.

We have examined the authorities cited by appellant to support its contention. We find none of them in point, with the possible exception of the case of Kansas Mutual Life Ins. Co. v. Pinson, 94 Tex. 553, 63 S. W. 531, an opinion by Judge Brown, which case was decided in 1901, eight years before article 5045 of the Revised Statutes was enacted; thus it seems clear to us that if this article had been in force at the time of the rendition of the above opinion by the Supreme Court, the conclusions reached would have been entirely different.

Therefore, finding no error in the record, the judgment of the trial court is in all things affirmed.